# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

BAKKA JEWELRY, INC.,
and Amr MOHAMED,

     *Plaintiffs*,

v.

Loren K. Miller, Director,
NEBRASKA SERVICE CENTER,
UNITED STATES CITZENSHIP
AND IMMIGRATION SERVICES;

Tracy Renaud, Senior Official
Performing the Duties of the Director,
UNITED STATES CITZENSHIP
AND IMMIGRATION SERVICES;

Alejandro Mayorkas, Secretary,
DEPARTMENT OF HOMELAND
SECURITY.

     *Defendants*.

Case No. **2:21-cv-10962**          .

CIVIL COMPLAINT

## **COMPLAINT**

## I.      <u>INTRODUCTION</u>

1.      This is an action brought pursuant to section 10b of the
Administrative Procedure Act, 5 U.S.C. § 702, *et seq*., (APA) seeking to hold
unlawful and set aside the decision of the United States Citizenship and
Immigration Services (hereinafter "USCIS") to deny USCIS case number
LIN2090352009, a Form I-140 Petition for Alien Worker in EB-1 multinational
manager status (hereinafter "I-140 Petition") on or about February 17, 2021.

2.      Plaintiff, BAKKA JEWLERY, INC. (hereinafter "Bakka Jewelry")
filed the I-140 Petition on behalf of Plaintiff Amr Mohamed (hereinafter
"Mohamed") on or about June 13, 2019 for the proffered permanent position of
General Manager of its Dearborn, Michigan based U.S. operation. Plaintiff Bakka
Jewelry Inc., located at 12821 W. Warren Rd., Dearborn, Michigan, 48126, is a
retailer of high quality, hand-made jewelry.

3.      Plaintiff Bakka Jewelry has employed Plaintiff Mohamed as General
Manager in temporary L-1A multinational manager nonimmigrant status since
2016. Defendant USCIS approved Plaintiff Bakka Jewelry's I-129 nonimmigrant
petitions three times in a row, with no gaps: February 1, 2016, December 5, 2016,
and March 9, 2019. With each approval, Defendant USCIS found that Plaintiff
Mohamed met the statutory and regulatory requirements of the L-1A
nonimmigrant classification, specifically that his General Manager job duties at the

2

foreign entity Bakka Egypt and his General Manager job duties at Bakka Jewelry were primarily "in a managerial capacity."

4.      Plaintiff Mohamed's management career in Jewelry dates back to 1991 when he became the manager of a small family-owned business, Milano Jewelry Store in Cairo, and doubled the profit margins. He expanded the business internationally to Turkey in 1998 and assumed control over all handmade gold jewelry manufacturing for the company in 1999. In 2005, he opened his own jewelry store in Cairo – Bakka Jewelry – as co-owner and managing partner. In 2006 Mr. Mohamed achieved the distinctive Diploma Certification from the world's largest Diamond Grading Institute (HRD Antwerp Diamond High Council Belgium). In 2007 he became General Manager for the international markets of Turkey, Thailand, and the Middle East, and in 2009 Mr. Mohamed led the opening of a Bakka Jewelry manufacturing and retail store in Thailand, and in 2013 a second location in Cairo. Bakka Jewelry enjoyed sustained growth during this period, reporting gross sales (using contemporary exchange rates) of $626,600 USD in 2012, $1.1 million USD in 2013, and $1.2 million USD in 2014. Based on this successful growth, in December of 2014 the partners of Bakka Jewelry in Egypt charged Plaintiff Mohamed with expanding the company into the United States jewelry market as well.

3

5.      In 2015, Plaintiff Bakka Jewelry Inc. was incorporated here in Michigan. At the outset, Mr. Mohamed owned 51% of the U.S. entity and on May 6, 2017 Mr. Mohamed acquired the remaining 49% of shares and remains the sole owner. The business plan for the U.S. affiliate called for an initial investment of $200,000 – half of which was invested by Plaintiff Mohamed. The plan called for the hiring of five employees over the first year and assigned Mr. Mohamed managerial responsibility to ensure its growth while also continuing to serve as General Manager of Bakka Egypt in order to sustain the overall financial health of the Egyptian affiliate and its worldwide operations. USCIS approved Plaintiff Bakka Jewelry's initial I-129 nonimmigrant petition on behalf of Plaintiff Mohamed on February 1, 2016, and in August of 2016, Bakka Jewelry opened its retail showroom in Dearborn, Michigan. USCIS approved extensions of Mr. Mohamed's L-1A multinational manager status twice – on December 5, 2016 and again on March 9, 2019. Under Mr. Mohamed's management, Bakka Jewelry Inc. has increased gross sales from $131,868 in 2017 to over $300,000 in 2020 – growth of over 127% - during a pandemic. Mr. Mohamed has invested over six years in this U.S. venture, moved his family from Egypt to the United States, invested large sums of money into the U.S. business, and employed American workers. Bakka Jewelry next filed an I-140 immigrant petition seeking to allow Mr. Mohamed, his wife, and their daughters to adjust to permanent resident status.

4

6.     On February 17, 2020, USCIS denied Plaintiff Bakka Jewelry's I-140 petition because it found that the positions of General Manager at Bakka Egypt and General Manager at Bakka Jewelry did not qualify as "in a primarily managerial capacity." This despite the fact that the definition of "*managerial capacity*" for L-1A non-immigrant petitions found in 8 CFR 214.2(*l*)(1)(ii)(B) and 8 U.S.C. 1101(a)(44)(A) is virtually identical in all material respects to the definition for EB-1 immigrant petitions found at 8 CFR 204.5(j)(2).

7.     Plaintiffs seek to have the February 17, 2021 decision by Defendant USCIS declared unlawful and set aside on the grounds that the Agency determination that Mr. Mohamed's position as General Manager of Bakka Jewelry is not in a primarily managerial capacity is based on arbitrary and capricious findings, as set forth fully in Sections VIII (A) through (E), *infra*.

8.     Additionally, the determination by Defendant USCIS that Mr. Mohamed's position abroad as General Manager of Bakka Egypt is not in a primarily managerial capacity should also be declared unlawful and set aside on the grounds that this Agency determination is also based on arbitrary and capricious findings, as set forth fully in Sections VIII (F) though (I), *infra*.

## II.   <u>JURISDICTION</u>

9.     This case arises under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.* and the Administrative Procedure Act (APA), 5 U.S.C. § 701

*et seq.* This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as a civil action arising under the laws of the United States, and 28 U.S.C. § 1361. This Court also has authority to grant declaratory relief under 28 U.S.C. §§ 2201-02, and injunctive relief under 5 U.S.C. § 702, and 28 U.S.C. § 1361. The United States has waived sovereign immunity under 5 U.S.C. § 702.

### III.  **VENUE**

10.  Venue in this judicial district is proper under 28 U.S.C. § 1391(e)(1), because this is a civil action in which the Defendants are an agency of the United States and officers of the United States, acting in their official capacity, and the judicial district is where both Plaintiff Bakka Jewelry and Plaintiff Amr Mohamed reside, and there is no real property involved in the action.

### IV.  **PARTIES**

11.  Plaintiff Bakka Jewelry, Inc. is a Michigan-based company incorporated in June 2015. The company operates its retail jewelry store at 12821 W. Warren Street, in Dearborn, Michigan.

12.  Plaintiff Amr Mohamed, a native and citizen of Egypt, has served as General Manager of Bakka Jewelry since its incorporation in June of 2015. Plaintiff Mohamed also resides in Oakland County, Michigan.

13.  Defendant Loren K. Miller is Director of the USCIS Nebraska Service Center ("NSC"). Among other responsibilities, the NSC adjudicates visa petitions

filed by employers such as the I-140 Petition for Alien Worker filed by Plaintiff Bakka Jewelry on behalf of Plaintiff Mohamed. Defendant Loren K. Miller is sued in his official capacity.

14.     Defendant Tracy Renaud is Acting Director of USCIS. In this role, Defendant Renaud directs the administration of USCIS which oversees the adjudication of immigration benefits and establishes and implements governing policies. Defendant Renaud is responsible for USCIS' policies, practices, and procedures, which includes the delegated personnel who adjudicated plaintiff Bakka Jewelry's I-140 petition. Defendant Renaud is sued in her official capacity.

15.     Defendant Alejandro Mayorkas is the Secretary of the Department of Homeland Security ("DHS"). DHS is the federal agency overseeing many component agencies, including USCIS. As Secretary, Defendant Mayorkas is responsible for the administration and enforcement of the INA and immigration-related laws. Defendant Mayorkas is sued in his official capacity.

16.     Defendant USCIS is a component of the Defendant DHS, 6 U.S.C. § 271, and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). USCIS is responsible for the adjudication of immigration benefits, including immigrant EB-1 petitions, and it was the agency that ultimately denied Plaintiffs' EB-1 petition.

17.     Defendant Department of Homeland Security ("DHS") is a cabinet department of the United States federal government responsible for immigration

related services at USCIS, enforcement (Immigration and Customs Enforcement or "ICE"), and investigations (Homeland Security Investigations or "HSI"), among other duties. DHS oversees USCIS and its implementation of federal law and policy with respect to immigration benefit applications.

## V.   **LEGAL FRAMEWORK**

18.   The INA provides for the allocation of immigrant visas to five categories of noncitizen beneficiaries based on their employment. 8 U.S.C. §§ 1153(b)(1)-(5). The employment-based first preference EB-1C category, relevant here, covers multinational executives and managers (EB-1C). 8 U.S.C. § 1153(b)(1).

19.   The requirements for EB-1C classification are unequivocal: Affiliation, employment abroad for one year, and managerial capacity are the **only** legal requirements, as set for in 8 U.S.C. § 1153(b)(1)(C):

> "if the alien, in the 3 years preceding the time of the alien's application for classification and admission into the United States under this subparagraph, has been employed for at least 1 year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and the alien seeks to enter the United States in order to continue to render services to the same employer or to a subsidiary or affiliate thereof in a capacity that is managerial or executive."

20.   The relevant law governing 'managerial capacity' is specified at both 8 U.S.C. §1101(a)(44)(A) and 8 CFR 204.5(j)(2):

> Managerial capacity means an assignment within an organization in which the employee primarily:

8

(A) Manages the organization, or a department, subdivision, function, or component of the organization;
(B) Supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;
(C) If another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization), or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and
(D) Exercises direction over the day-to-day operations of the activity or function for which the employee has authority.

21.     Of critical important to the instant case, the definition of "managerial capacity" is the same for L-1A nonimmigrant and EB-1C immigrant multinational managers. The definition of "*managerial capacity*" applied to L-1A non-immigrant petitions (*see* 8 U.S.C. 1101(a)(44)(A) and 8 CFR 214.2(*ℓ*)(1)(ii)(B)) and the one applied to immigrant petitions E-13 classification (*see* 8 U.S.C. 1101(a)(44)(A) and 8 CFR 204.5(j)(2)) are virtually identical.

22.     Case law makes clear that a proposed position can qualify as *primarily* managerial even though "the Beneficiary may be required to perform some operational or administrative tasks from time to time." *Matter of Z-A- Inc., Adopted Decision 2016-02 (AAO Apr. 14, 2016), at 7.* (attached as **Exhibit A**).[1]

---

[1] USCIS occasionally adopts an AAO non-precedent decision to provide policy guidance for USCIS personnel. An adopted AAO decision is identified by a unique citation format as well as by a USCIS cover memorandum announcing its designation as an adopted decision. Adopted Decisions are binding on USCIS employees in making determinations on applications and petitions for immigration benefits. *Matter of Z-A, Inc., Adopted Decision 2016-*

23.    In *Matter of Z-A-,* the AAO also determined that "[i]f staffing levels are used as a factor in determining whether an individual is acting in a managerial or executive capacity, the [Department of Homeland Security] shall take into account the reasonable needs of the organization, component, or function in light of the overall purpose and stage of development of the organization, component, or function." *Matter of Z-A-*, at 4.

24.    The Standard of Review during USCIS adjudication of I-140 petitions is "preponderance of the evidence," meaning that the matter asserted is more likely than not to be true. Petitioners are not required to demonstrate eligibility beyond a reasonable doubt. *See Matter of Chawathe*, 25 I&N Dec. 369 (Comm'r AAO Oct. 20, 2010). Imposing a higher standard of review is a violation of law.

25.    Although a prior approval by USCIS does not create an automatic entitlement to the approval of a subsequent petition with similar facts, "a pattern of visa grants of sufficient magnitude could obligate the agency to provide a 'reasoned explanation for … treating similar situations differently'." *Fogo do Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1144 (D.C. Cir. 2014) (citing *ANR Pipeline Co. v. FERC*, 71 F.3d 897, 901 (D.C. Cir. 1995). (emphasis added).

---

*02 (AAO Apr. 14, 2016)* is such a decision. *See* AAO Practice Manual, Chapter 3, Appeals, at https://www.uscis.gov/administrative-appeals/aao-practice-manual/chapter-3-appeals.

## VI.    FACTUAL ALLEGATIONS

26.    Plaintiff Bakka Jewelry, Inc. is a Michigan-based company incorporated in June 2015. The company operates its retail jewelry store at 12821 W. Warren Street, in Dearborn, Michigan.

27.    Bakka Jewelry and Bakka Egypt are affiliates under 8 CFR § 204.5(j)(2)(A), as Plaintiff Mr. Amr Mohamed owns 100% of Bakka Jewelry and is 51% owner and the controlling partner of Bakka Egypt. Thus, the two entities are "owned and controlled by the same individual."

28.    Plaintiff Mohamed has served as General Manager and Acting Partner of affiliate entity Bakka Egypt since its founding in 2005.

29.    Defendant USCIS previously approved three I-129 non-immigrant petitions filed by Plaintiff Bakka Jewelry granting L-1A multinational manager classification to Plaintiff Mohamed on February 1, 2016, December 5, 2016, and March 9, 2019. Copies of the three approval notices are attached as **Exhibit B.**

30.    On June 13, 2019, Plaintiff Bakka Jewelry filed the instant I-140 Immigrant Petition for an Alien Worker requesting EB-1C multinational manager classification on behalf of Mr. Mohamed under 8 U.S.C. § 1153(b)(1)(C). With the I-140 Petition, Plaintiff Bakka Jewelry included a detailed description of job duties for the proposed General Manager position in the U.S. as an addendum to Form I-140, a complete organizational chart with job duties for all employees of Bakka

Jewelry as Exhibits 18-19, a comprehensive organizational chart and detailed job duties of the General Manager and all twenty-six employees of Bakka Egypt as Exhibit 11. Excerpts of the I-140 filing relevant to managerial capacity are attached as **Exhibit C**.

31.    On November 18, 2019, USCIS issued a Request for Evidence (RFE) requesting that Bakka Jewelry provide additional evidence regarding, *inter alia*, additional evidence demonstrating that Mr. Mohamed's positions as General Manager at Bakka Egypt and General Manager at Bakka Jewelry are both "in a primarily managerial or executive capacity." On February 11, 2020, Plaintiff Bakka Jewelry timely responded to the RFE. Plaintiff Bakka Jewelry provided additional evidence in the form of more detailed job duties and tasks for both positions. Plaintiff provided, as requested in the RFE, additional detailed tasks and sub-duties for the proposed General Manager position (*RFE Response at Exhibit N*), an updated organizational chart reflecting staff changes since the filing of the petition (*Response at Exhibit O*), and complete job duties for all subordinate employees (*RFE Response at Exhibit P*). Similarly, as requested in the RFE, Plaintiff also provided additional detailed tasks and sub-duties regarding the General Manager position at Bakka Egypt (*RFE Response at Exhibit R*). Excerpts of the RFE response are attached as **Exhibit D**.

32.     On March 23, 2020, USCIS issued a denial of Plaintiff Bakka Jewelry's I-140 Immigrant Petition. The denial asserted that that neither the General Manager position at Bakka Egypt nor the General Manager position at Bakka Jewelry in the United States were in a primarily managerial capacity. A copy of the initial I-140 denial is attached as **Exhibit E**.

33.     On May 19, 2020, Plaintiff Bakka Jewelry submitted to Defendant USCIS a Motion to Reopen requesting that USCIS reopen and reconsider its denial of Plaintiff Bakka Jewelry's I-140 petition. In support of this Motion, Plaintiff Bakka Jewelry resubmitted copies of all operative organizational charts, employee lists, and employee job duties. Plaintiffs also submitted new evidence including a sworn statement signed by Plaintiff Mohamed which detailed percentages for each and every task and sub-duty for the General Manager position at Bakka Egypt and the General Manager position at Bakka Jewelry in the U.S.. A copy of the Sworn Statement and relevant exhibit excerpts are attached here at **Exhibit F**.

34.     On February 17, 2021, Defendant USCIS granted Plaintiff Bakka Jewelry's Motion to Reopen, but upheld the denial of the I-140. The final agency decision, largely an exact copy of the March 23, 2020 denial, again asserted that that neither the General Manager position at Bakka Egypt nor the General Manager position at Bakka Jewelry in the United States were in a primarily managerial

capacity. A copy of the February 17, 2021 final agency decision is attached at **Exhibit G**.

35.     Due to Plaintiff Bakka Jewelry's timely-filing of another I-129 non-immigrant petition on November 30, 2020 to extend Plaintiff Mr. Mohamed's L-1A nonimmigrant status, Mr. Mohamed has thus far continued in his employment with Bakka Jewelry as General Manager in the United States. *See* 8 C.F.R. § 214.2($\ell$)(15)(ii). That I-129 petition remains pending.

36.     Plaintiff Amr Mohamed's ability to remain in the United States in nonimmigrant L-1A status is limited. The maximum total period of stay in the United States in L-1A status is seven years, with extensions in two-year increments. *See* 8 U.S.C. § 1184(c)(2)(D)(i); 8 C.F.R. § 214.2($\ell$)(15)(ii).

37.     Unless the Court vacates USCIS' denial of Bakka Jewelry's I-140 immigrant visa petition, Bakka Jewelry will lose the central and founding employee of its U.S. affiliate company. Such a loss of the single most important senior managerial position would unduly burden and disrupt Bakka Jewelry's business operations, destroy a successful U.S. entrepreneurial business, and disrupt family unity for Plaintiff Mohamed, his wife, and their daughters.

### VII.   Exhaustion

38.     Defendant USCIS's February 17, 2021 denial of Plaintiff Bakka Jewelry's I-140 Petition constitutes a final agency action under the APA, 5 U.S.C.

§ 701, *et seq.* Neither the INA nor Department of Homeland Security (hereinafter

"DHS") regulations at 8 C.F.R § 103.3(a) require an administrative appeal of the

denial. Accordingly, Plaintiffs have no administrative remedies to exhaust. See e.g.

*EG Enters v. DHS,* 467 F. Supp. 2d 728, 732-33 (E.D. Mich. 2006); *RCM*

*Technologies, Inc. v. US Dept. of Homeland Sec.*, 614 F. Supp. 2d 39, 45 (D.D.C.

2009) ([P]laintiffs need not pursue an AAO appeal before seeking judicial review

of denied visa applications in federal court.").

39.　　Under 5 U.S.C. §§ 702 and 704, Plaintiffs have suffered a "legal

wrong" and have been "adversely affected or aggrieved" by agency action for

which there is no adequate remedy at law.

## VIII.  <u>CAUSE OF ACTION</u>

40.　　5 U.S.C. § 706 provides in material part that:

To the extent necessary to decision and when presented, the reviewing
court shall decide all relevant questions of law, interpret constitutional
and statutory provisions, and determinte the meaning or applicability
of the terms of an agency action. The reviewing court shall …

(2) hold unlawful and set aside agency action, findings, and
conclusions found to be…
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in
accordance with law.

41.　　Agency actions are reviewed under the arbitrary and capricious

standard. *Hosseini v. Nielsen*, 911 F.3d 366, 371 (6th Cir. 2018). An agency's

decision is "arbitrary and capricious if the agency fails to examine relevant

evidence or articular a satisfactory explanation for the decision." *Bangura v. Hansen*, 434 F.3d 487, 502 (6th Cir. 2006) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983). The reviewing Court must "ensure that the agency 'articulate[d] a rational connection between the facts found and the choice made and … provide[d] something in the way of documentary support for its action." *Hosseini*, 911 F.3d at 371 (quoting *GTE Midwest, Inc. v. Fed. Commc'ns Comm'n*, 233 F.3d 341, 345 (6th Cir. 2000). The agency must consider the relevant factors and engage in "reasoned decision making." *Michigan v. E.P.A.*, 576 U.S. 743, 750 (2015) (quoting *Allentown Mack Sales & Service, Inc. v. NLRB*, 522 U.S. 359, 374 (1998)).

**COUNT I: Violation of the Administrative Procedure Act Violation (5 U.S.C. § 706), wherein Defendants determined that Plaintiff Mohamed's General Manager position Bakka Jewelry is not primarily in a managerial capacity.**

42.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

**A. The finding that "the petitioner did not submit sufficient information about the beneficiary's actual daily tasks and therefore we cannot determine whether such tasks would be primarily executive or managerial in nature" is arbitrary and capricious because the record shows that the submitted job duties match the Department of Labor O*Net SOC job code for 11-1021 "General and Operations Managers"**

**and therefore the agency finding lacks a rational connection to the facts in the record.**

43.     Agency precedent is clear that "[w]hen examining the managerial capacity of a beneficiary, we look first to the petitioner's description of the job duties." *Matter of Z-A*, at 4.

44.     The record in the instant case includes the job description for Plaintiff Mohamed's position as General Manager at Bakka Jewelry, including an exhaustive set of job duties with detailed sub-duties and tasks, which includes percentages of time allocated to each and every task. *See Sworn Statement,* at Exhibit G.

45.     The Department of Labor publishes projections for 790 detailed occupations that are included in the Standard Occupational Classification System (SOC) in the Occupational Outlook Handbook ("OOH" or the "handbook"). *See* Bureau of Labor Statistics, U.S. Department of Labor, Occupational Outlook Handbook, on the internet at http://www.bls.gov.ooh, visited April 12, 2021.

46.     Defendant USCIS' Administrative Appeals Office ("AAO") has long recognized the *Handbook* as an authoritative source on the duties and educational requirements of a wide variety of occupations. *Matter of Sea, Inc.*, 19 I&N Dec. 817, 819 (Comm. 1988); *Matter of [name not provided],* EAC 07 130 51147 (AAO Oct. 5, 2009). Copies of agency decisions attached as **Exhibit H**.

47.     The Employment and Training Administration O*Net materials developed for the Department of Labor provide a list of job duties, tasks, and activities for SOC code occupations in the OOH. The O*Net Summary Report for occupation code 11-1021.00 "General and Operations Managers" includes a list of job duties, tasks, and activities defined by the DOL as typical of General Managers. A copy of the Summary Report was submitted with Plaintiff Bakka Jewelry's Motion to Reopen. *See* Exhibit F; *see also* U.S. Department of Labor, (2019), *General and Operations Managers*, available on the internet at O*Net Online, https://www.onetonline.org/link/summary/11-1021.00.

48.     Of the 8 primary job duties and 47 sub-duties and tasks submitted for the position of General Manager at Bakka Jewelry, virtually all of them correlate with managerial duties, tasks, or activities in O*Net Summary Report for code 11-1021, General and Operations Managers. The final agency decision failed entirely to analyze the provided detailed list of sub-duties and tasks – which included percentages for each task – with the O*Net evidence in the record, instead merely concluding in the I-290B denial that "USCIS can only assume the beneficiary will actively perform non-qualifying duties." *See I-1290B Decision, at 9*.

49.     This finding is arbitrary and capricious as it failed to examine the relevant O*Net evidence in the record as required under <u>Bangura</u>.

**B. The finding that Bakka Jewelry lacks sufficient employees for Plaintiff Mohamed's General Manager position to be in a managerial capacity is**

**arbitrary and capricious because it fails to consider relevant evidence and is not in accordance with the law.**

50.    Defendant USCIS states in the final decision that "[w]hen a petitioning entity has a small number of employees, it becomes questionable as to whether the beneficiary is acting primarily in an executive or managerial capacity." *I-290B Decision, at 11.*

51.    The regulations regarding the EB-1C multinational executives and managers classification do not require a particular number of employees in order for a position to qualify as primarily managerial. *See* 8 C.F.R. § 204.5(j). In fact, "[i]f staffing levels are used as a factor in determining whether an individual is acting in a managerial or executive capacity, the reasonable needs of the organization, component, or function, in light of the overall purpose and stage of development of the organization, component, or function, shall be taken into account." 8 C.F.R. § 204.5(j)(4)(ii); *Matter of Z-A-*, at 5. Furthermore, "[t[hat a petitioner may have only a few employees directly on its payroll, although a relevant consideration in the determination of whether a beneficiary qualifies as an L-1A manager, does not necessarily compel a conclusion that the beneficiary primarily performs day-to-day operational duties." *Matter of Z-A-*, at 6, citing *Brazil Quality Stones Inc. v. Chertoff*, 551 F.3d 1063, 1070 (9th Cir. 2008).

52.    The finding that Plaintiff Bakka Jewelry is does not have enough employees for the General Manager position to qualify as managerial is arbitrary

and capricious because it fails to consider relevant evidence in the record in violation of <u>Bangura</u> and is contrary to established law.

**C. The finding that Bakka Jewelry was not sufficiently mature and complex in order for positions within the organization to meet the regulatory requirements for either executive or managerial capacity is arbitrary and capricious because it lacks a rational connection to the evidence in the record and is not in accordance with the law.**

53.     In the final I-1290B Decision, USCIS erroneously states that "[t]he record reflects that the petitioning entity was in the early stages of development at the time of filing was not sufficiently mature and complex, in order for positions within the organization to meet the regulatory requirements for either executive or managerial capacity." (*I-290B Decision, at 11*). <u>This is demonstrably untrue and clearly factually erroneous.</u>

54.     The regulations for I-129 petitions on behalf of L-1A multinational managers *in the nonimmigrant context* include additional evidentiary requirements for a 'new office' – defined as "having been doing business in the United States" for "less than one year." 8 C.F.R. § 214.2(*ℓ*)(1)(ii)(F). Defendant USCIS determined that Bakka Jewelry met the new office requirements when it approved the initial I-129 petition on behalf of Plaintiff Mohamed on February 1, 2016.

55.     The approvals of subsequent I-129 petitions extending Plaintiff Mohamed's status as an L-1A multinational manager on December 5, 2016 and

March 9, 2019 demonstrate that Defendant USCIS determined that Plaintiff Bakka Jewelry is sufficiently mature and complex to support a General Manager.

56.     There are no comparable 'new office' regulations in the EB-1C immigrant visa context for multinationals under 8 C.F.R. § 204.5(j).

57.     Defendant USCIS' statement that a three-year-old affiliate entity is unable to meet the regulatory requirements for managerial capacity is patently untrue. The determination by the agency to the contrary in the final agency decision is arbitrary and capricious as it lacks a rational connection to the evidence in the record in violation of <u>Hosseini</u> and is not in accordance with controlling law and regulation.

**D. The finding that petitioner failed to show which Bakka Jewelry subordinate employees would relieve the beneficiary from performing non-qualifying administrative or operations tasks is arbitrary and capricious because the record clearly shows delegation and review of non-qualifying tasks and there is no evidence in the record to the contrary.**

58.     The organizational charts in the record clearly show Plaintiff Mohamed's subordinate employees at the U.S. entity. The I-140 filing included an organizational chart and list of all employees, *see* Exhibit C, and the RFE Response submitted February 11, 2020 included an amended organizational chart which reflected current staff at the time of the response and a complete list of job duties for subordinate employees. *see* Exhibit D.

59.     Plaintiff Mohamed's General Manager job duties expressly include both the delegation of routine tasks to specific subordinate employees and the General Manager's review of delegated tasks completed by specific subordinates. *See* Exhibit F. No less than 30 of the 47 detailed tasks and sub-duties in Mr. Mohamed's General Manager job description expressly and specifically indicate responsibility over subordinate employees and there is no evidence in the record to the contrary. This finding is arbitrary and capricious as the agency fails to consider relevant evidence in the record as required by <u>Bangura</u> and there is no evidence to the contrary in the record to provide documentary support for its decision as required by <u>Hosseini</u>.

**E. The finding that "the petitioner has not established the subordinate employees hold positions which require, at a minimum a baccalaureate degree as the minimum for entry into the field of endeavor" imposes an irrelevant *ultra vires* evidentiary requirement that is contrary to law and regulation.**

60.     The controlling law and regulations state that one requirement of managerial capacity is that beneficiary "[s]upervises and controls the work of other supervisory, professional, or managerial employees." 8 U.S.C. §1101(a)(44)(A) and 8 CFR 204.5(j)(2). The statutory construction is clear – the three acceptable types of subordinate employees are supervisory, professional, *or* managerial. The "or" is critical. It is *not* a requirement that in order to qualify as a manager, Mr. Mohamed must have only professional subordinates, who themselves require a

22

Bachelor's Degree. The AAO has previously reversed the California Service Center Director applying an improper standard by requiring a bachelor's degree or higher for supervisory employees, finding that "the director's determination appears to be based on erroneous conclusions of fact based on the record and misapplication of the law. In order to qualify as a manager, the beneficiary must oversee other supervisory employees, or, professional employees, or primarily manage an essential function of the organization." *Matter of [redacted]*, AAO Nov. 16, 2012. A copy of the decision is attached hereto at **Exhibit H**.

61.     USCIS cannot simply create new documentary requirements not supported by the regulations. See *Love Korean Church v. Chertoff*, 549 F.3d 749, (9th Cir. 2008). In *Love Korean*, the Court reversed the AAO and found that the USCIS had improperly created an *ultra vires* requirement for payroll records when the pertinent immigration regulations clearly stated that an employer's letter was sufficient initial evidence for the petition. The Court held that "it was therefore unreasonable for the agency to read such a requirement into" the regulations. *Id*., at 758. Otherwise, "It is an abuse of discretion for an agency to deviate from the criteria of its own regulation." *Buletini v. INS*, 860 F.Supp 1222, 1234 (E.D. Mich. 1994). The Buletini Court found that the agency denial in spite of Petitioner having presented evidence sufficient to meet the required criteria was arbitrary and capricious and an abuse of discretion. *Id*.

23

62.     The requirement imposed by the agency that Plaintiff Mohamed's supervisory subordinates must possess Bachelor's degrees is an arbitrary and capricious *ultra vires* requirement that is contrary to controlling law, and an abuse of discretion.

**COUNT II: Violation of the Administrative Procedure Act Violation (5 U.S.C. § 706), wherein Defendants determined that Plaintiff Mohamed's position abroad as General Manager at Bakka Egypt is not primarily in a managerial capacity.**

63.     Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

**F. The finding that "the foreign job description does not sufficiently demonstrate that the beneficiary primarily devoted his time to qualifying managerial duties abroad" is arbitrary and capricious because the record shows that the submitted job duties match the Department of Labor O\*Net SOC job code for 11-1021 "General and Operations Managers" and therefore the agency finding lacks a rational connection to the facts in the record.**

64.     The record in the instant case includes the job description for Plaintiff Mohamed's position as General Manager at Bakka Egypt, including an exhaustive set of job duties with detailed sub-duties and tasks, which includes percentages of time allocated to each and every task. *See* Exhibit F.

65.     The O\*Net summary report for General Managers includes many tasks, skills, and activities that perfectly match the Beneficiary's job duties and detailed sub-tasks yet are disputed by the Service in the denial. Of the 9 primary job duties and 37 sub-duties and tasks submitted for the position of General

24

Manager at Bakka Egypt, virtually all of them correlate with managerial duties, tasks, or activities in O*Net Summary Report for code 11-1021, General and Operations Managers. The final agency decision failed entirely to analyze the provided detailed list of sub-duties and tasks – which included percentages for each task – with the O*Net evidence in the record, instead concluding in the I-290B denial that "USCIS can only assume the beneficiary will actively perform non-qualifying duties." *See I-1290B Decision,* at 9.

66.     This finding is arbitrary and capricious as it failed to examine the relevant O*Net evidence as required under <u>Bangura</u> and lacks a rational connection to the uncontroverted evidence in the record.

### G. The finding that Beneficiary's duties at Bakka Egypt are vague because they could apply to a management employee acting in any customer service industry is arbitrary and capricious, lacks a rational connection to the facts in the record, and imposes an *ultra vires* evidentiary requirement that is contrary to law and regulation.

67.     Contrary to the preponderance of the evidence in the record detailing the General Manager position at Bakka Egypt, USCIS nonetheless states in the I-140 denial that "the Beneficiary's duties are vague and could apply to a management employee acting in any customer service industry." *I-290B Decision, at 13*. This finding is arbitrary and capricious and an abuse of discretion as it contravenes existing law and imposes an improper *ultra vires* requirement for evidence not specified in the regulations. Neither the statutory requirements for the

EB-1 classification found at 8 U.S.C. § 1153(b)(1)(C) nor the clarifying

regulations found at 8 U.S.C. §1101(a)(44)(A) and 8 CFR 204.5(j)(2) require that

managerial tasks must be unique to a particular industry – in this case jewelry.

68.    As discussed at paragraph 61, *supra*, USCIS cannot simply create new

documentary requirements not supported by the regulations. *Love Korean Church*,

at 758. As previously held by this District, "[i]t is an abuse of discretion for an

agency to deviate from the criteria of its own regulation." *Buletini*, at 1234.

69.    The requirement imposed by the agency that Plaintiff Mohamed's

managerial job duties must be unique to his jewelry industry in order to qualify as

'in a managerial capacity' is an arbitrary and capricious *ultra vires* requirement

that is contrary to controlling law, and an abuse of discretion.

**H. The finding that petitioner failed to show "who within its foreign
organization would relieve the beneficiary from performing the non-
qualifying administrative or operations tasks" is arbitrary and
capricious because the record clearly shows delegation and review of
non-qualifying tasks and there is no evidence in the record to the
contrary.**

70.    The organizational charts in the record clearly show Plaintiff

Mohamed's subordinate employees at Bakka Egypt. The I-140 filing included an

organizational chart and list of all 25 Bakka Egypt subordinate employees, *see*

Exhibit C, and the Motion to Reopen included an updated organizational chart with

clear reporting lines, *see* Exhibit F, and the Sworn Statement submitted with

Motion to Reopen demonstrates delegation to subordinate employees in the

detailed list of all General Manager duties, sub-duties, and tasks with percentages assigned to each, *see* Exhibit F. The Bakka Egypt organizational chart clearly shows the General Manager's subordinates: Mr. Mahmoud Hussien, the Assistant General Manager, as well as Production Manager, the two Retail Sales Managers, the Wholesale Manager, and two Accountants. Below these positions, there are 18 other subordinate employees. Plaintiff Mohamed's General Manager job duties expressly include both the delegation of routine tasks to specific subordinate employees and the General Manager's review of delegated tasks completed by specific subordinates. *See* Exhibit F.

71.     Defendant's finding that petitioner failed to show which Bakka Egypt subordinate employees relieve the General Manager from performing non-qualifying tasks is arbitrary and capricious as it lacks a rational connection to the evidence in the record which plainly demonstrates delegation and review, and there is no evidence to the contrary.

**I.  The finding that the petitioner has not demonstrated the beneficiary managed other supervisory, professional, or managerial employees is arbitrary and capricious because it fails to consider relevant evidence submitted with the Motion to Reopen and lacks a rational connection to the facts in the record.**

72.     The organizational chart included with the Motion to Reopen identifies multiple supervisory subordinate employees. Plaintiff Mohamed's direct managerial report is Assistant General Manager Mahmoud Hussein, who himself

directly supervises three supervisory direct reports as well as two professional accountants. Plaintiff Mohamed's indirect reports include three supervisory managers, two accounting professionals, and four other production managers. *See* Exhibit F.

73.    The evidence in the record clearly shows that Plaintiff Mohamed "supervises and controls the work of other supervisory, professional, or managerial employees" as required by 8 C.F.R. § 204.5(j)(2).

74.    Nonetheless, in the final I-290B Decision, the agency states that the evidence "still does not show the beneficiary managed supervisory reports at Bakka Egypt." *I-290B Decision, at 14*. The agency finding that the petitioner has not demonstrated the beneficiary managed other supervisory, professional, or managerial employees is arbitrary and capricious because contrary to the requirements of <u>Bangura</u>, it disregards evidence that establishes that Mr. Mohamed supervised other supervisory and professional employees and lacks a rational connection to the evidence in the record.

## IX.    <u>CONCLUSION</u>

75.    Defendant USCIS' determination that Plaintiff Amr Mohamed's position as General Manager of Bakka Jewelry, Inc. is not "in a primarily managerial capacity violates the plain language of 8 U.S.C. § 1153(b)(1)(C), and implementing regulations at 8 C.F.R. § 204.5(j)(3)(i).

28

76.     Defendant USCIS' determination that Plaintiff Amr Mohamed did not serve in a primarily managerial capacity in his position at Bakka Egypt for one of the three years previous to the filing of his initial petition violates the plain language of 8 U.S.C. § 1153(b)(1)(C) and 8 C.F.R. §§ 204.5(j)(2) and 204.5(j)(3).

77.     Defendant USCIS based its denial of Plaintiff Bakka Jewelry's I-140 petition on behalf of Plaintiff Mohamed on unlawful findings that are arbitrary and capricious, lack a rational connection to the evidence in the record, fail to consider relevant evidence in the record, impose *ultra vires* requirements not in the regulations, and are contrary to controlling law.

78.     Furthermore, Defendant USCIS failed to offer a reasoned explanation why it was treating this virtually identical I-140 petition differently than the three previously approved I-129 nonimmigrant petitions filed by Plaintiff Bakka Jewelry on behalf of Mr. Mohamed. The three prior approvals under virtually identical facts constitute a pattern of visa grants of sufficient magnitude to obligate the agency to provide a reasoned explanation for treating similar situations differently.

79.     As a result of Defendant USCIS' unlawful decision, Plaintiff Bakka Jewelry has suffered, and will continue to suffer, injury from the denial of its immigrant visa petition, by depriving Bakka Jewelry of Mr. Mohamed's services after the expiration of his nonimmigrant status.

80.     As a result of Defendant USCIS' unlawful decision, Plaintiff Amr Mohamed has suffered, and will continue to suffer, injury from the denial of Bakka Jewelry's immigrant visa petition on his behalf, by depriving him of the ability to remain and work in the United States for the company he has lawfully built and managed for over six (6) years. In addition, he and his wife Ms. Rejan Habib will suffer from being unable to qualify for lawful permanent resident status.

## X.    **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant the following relief:

1.  Declare that Defendant USCIS' denial of Plaintiff Bakka Jewelry's Petition for Alien Worker (Form I-140) is unlawful;

2.  Order USCIS to grant Plaintiff's I-140 Petition for EB-1C status;

3.  Award Plaintiff their attorney's fees and costs;

4.  Grant such other relief as is appropriate.

Respectfully submitted this 28th day of April, 2021.

/s/ GLENN ERIC SPROULL
_____
GLENN ERIC SPROULL (IL 6276310)
Attorney for Petitioner
Palmer Rey PLLC
29566 Northwestern Hwy, Suite 200
Southfield, MI 48034
(248) 522-9500
eric@palmerrey.com

## <u>INDEX OF EXHIBITS</u>

Exhibit A    *Matter of Z-A-, Inc., AAO Adopted Decision*

Exhibit B    Prior I-129 Approval Notices for L-1A Classification

Exhibit C    I-140 Petition [LIN1990519863], June 13, 2019, excerpts

- ▪ I-140 Petition
- ▪ Addendum - job duties
- ▪ Ex. 11 (Bakka Egypt ORG CHART and duties)
- ▪ Ex. 18 and 19 (USA ORG CHART and duties)

Exhibit D    Response to RFE, Feb. 13, 2020, excerpts

- ▪ Ex. N (USA detailed job duties)
- ▪ Ex. O (USA updated ORG CHART)
- ▪ Ex. P (USA subordinate job duties)
- ▪ Ex. R (Egypt detailed job duties)
- ▪ Ex. S (Egypt clarified ORG CHART)

Exhibit E    USCIS Decision denying I-140, Mar. 23, 2020

Exhibit F    Motion to Reopen, May 20, 2020, excerpts

- ▪ Sworn Statement of Plaintiff Mohamed
- ▪ Ex. H (Egypt clarified ORG CHART)
- ▪ Ex. J (O*Net Report, 11-1021.00, General Managers)

Exhibit G    FINAL I-1290B Decision affirming denial of I-140, Feb. 17, 2021

Exhibit H    Unpublished Agency Decisions