# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Bakka Jewelry, Inc. and Amr
Mohamed,

                     Plaintiffs,

v.

Loren K. Miller, Director,
Nebraska Service Center, United
States Citizenship and
Immigration Services, et al.,[1]

                     Defendants.

Case No. 21-10962

Judith E. Levy
United States District Judge

Mag. Judge Curtis Ivy, Jr.

_____/

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [19]

      Before the Court is Plaintiffs' Motion for Summary Judgment. (ECF No. 19.) For the reasons set forth below, the Court denies Plaintiffs' Motion for Summary Judgment. (ECF No. 19.)

## I.      Background

---

[1] The Court takes notice that Kristi Noem is now Secretary of Homeland Security and Joseph B. Edlow is Director of United States Citizenship and Immigration Services.

Plaintiffs are Bakka Jewelry, Inc. ("Bakka Jewelry"), a Michigan company, and Amr Mohamed, "a native and citizen of Egypt [who] has served as General Manager of Bakka Jewelry since its incorporation in June of 2015." (ECF No. 11, PageID.271.) Before entering the United States, Mohamed was general manager of Bakka Egypt, an affiliate company to Bakka Jewelry. (ECF No. 18-2, PageID.1696.) Mohamed has an ownership stake in both companies. (*Id.*)

United States Citizenship and Immigration Services ("USCIS") initially approved Mohamed's I-129 non-immigrant visa petition, which it subsequently extended several times. (ECF No. 11-3.) Plaintiffs also sought an immigrant visa by filing a I-140 immigrant visa petition. (ECF No. 11-4.) USCIS denied the I-140 petition in 2020, which triggered the present litigation. (ECF No. 11-6.)

Plaintiffs filed this lawsuit on April 28, 2021. (ECF No. 1.) On August 9, 2021, on stipulation of the parties, the Court remanded the proceedings without prejudice to USCIS for further adjudication. (ECF No. 9.) On July 31, 2024, Plaintiffs reinstated the case after USCIS denied Plaintiffs' request for an immigrant visa. (ECF No. 10.) Plaintiffs then filed an amended complaint. (ECF No. 11.)

2

On October 15, 2024, Plaintiffs filed a motion for summary judgment, which is fully briefed. (ECF Nos. 19, 21, 22, 23.)

## II.   Legal Standard

The Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, "allows persons to challenge agencies' actions." *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 441 (6th Cir. 2022). Courts review challenged agencies actions and set them aside when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This "deferential standard" means that an agency action may not "fail[] to examine relevant evidence or articulate a satisfactory explanation for the decision." *Bangura v. Hansen*, 434 F.3d 487, 502 (6th Cir. 2006); *see also City of Cleveland v. Ohio*, 508 F.3d 827, 838 (6th Cir. 2007) (explaining that this standard applies at summary judgment when a court considers a final agency action under the APA). An agency must engage in a "logical and rational" decision-making process when it acts, in addition to considering "the relevant factors." *Michigan v. E.P.A.*, 576 U.S. 743, 750 (2015) (internal quotation marks omitted). Courts review agency actions to ensure that the agency "articulated a rational connection between the facts found and the choice

made and provided something in the way of documentary support for its action." *Hosseini v. Nielsen*, 911 F.3d 366, 371 (6th Cir. 2018) (citation modified). When reviewing an agency action, courts focus on the "the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

Individuals and entities who apply for visas have the burden to establish their eligibility for the visa they seek. 8 U.S.C. § 1361; *see also* 8 C.F.R. § 103.2(b)(1) ("An applicant or petitioner must establish that he or she is eligible for the requested benefit at the time of filing the benefit request and must continue to be eligible through adjudication"). That burden is met if an applicant establishes their eligibility by a preponderance of the evidence, meaning the evidence shows "that the applicant's claim is probably true." *Matter of Chawathe*, 25 I. & N. Dec. 369, 376 (AAO 2010) (internal quotations omitted).

## III. Analysis

Plaintiffs seek summary judgment, asking the Court to "set[] aside the December 7, 2023, decision of the United States Citizenship and Immigration Services ("USCIS") denying the I-140 Immigrant Petition for Alien Workers filed by Plaintiff Bakka Jewelry seeking EB-1C

classification of its General Manager, Plaintiff Mohamed, as a multinational manager." (ECF No. 19, PageID.1921.)

The United States allots "employment-based" visas for several categories of individuals, including "[c]ertain multinational executives and managers." 8 U.S.C. § 1153(b)(1)(C). Such so-called EB-1C visas are available if

> in the 3 years preceding the time of the alien's application for classification and admission into the United States under this subparagraph, [they have] been employed for at least 1 year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and the alien seeks to enter the United States in order to continue to render services to the same employer or to a subsidiary or affiliate thereof in a capacity that is managerial or executive.

*Id.* Working in a "managerial capacity" means that someone has

> an assignment within an organization in which [he or she] primarily--
>
> (i) manages the organization, or a department, subdivision, function, or component of the organization;
>
> (ii) supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;
>
> (iii) if another employee or other employees are directly supervised, has the authority to hire and fire or recommend

5

those as well as other personnel actions (such as promotion and leave authorization) or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and

(iv) exercises discretion over the day-to-day operations of the activity or function for which the employee has authority.

8 U.S.C. § 1101(a)(44)(A). The relevant statute also sets forth that "[a] first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional." *Id.*

Plaintiffs argue that Defendants' denial of the I-140 immigrant visa petition was arbitrary and capricious. They contend that the petition was treated differently than previous petitions that had been approved. They also argue that Defendants misapplied the definition of managerial capacity. Defendants disagree, asserting that Plaintiffs did not meet their burden, in part because they failed to explain inconsistencies in the evidentiary record.[2]

---

[2] Plaintiffs also cite the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). (ECF No. 19, PageID.1926; ECF No. 22, PageID.1984.) They argue that the Court should not defer to agency determinations of law but should instead exercise its own judgment on matters of statutory interpretation. (*Id.*) Defendants deny that they are asking "the Court to defer to

6

### A.   USCIS's Treatment of Plaintiffs' Nonimmigrant and Immigrant Petitions

Plaintiffs argue that Defendants acted in an arbitrary and capricious manner, insofar as they granted "the five previous *nonimmigrant* petitions but den[ied] the instant *immigrant* petition" despite the petitions all sharing "the same factual basis." (ECF No. 19, PageID.1930.) Defendants respond that courts have repeatedly held that approval of nonimmigrant visa petitions does not mean a later denial of an immigrant visa petition is arbitrary and capricious. (ECF No. 21, PageID.1965.) They also argue that Plaintiffs fail to demonstrate that the evidentiary record was the same in the approved nonimmigrant visa petitions and the denied immigrant visa petition. (*Id.* at 1967.)

Courts have indeed rejected precisely the sort of argument Plaintiffs make here, which relies on prior approvals of nonimmigrant visas to attack the denial of an immigrant visa. *See, e.g., Tianhai Elec. N.*

---

USCIS's interpretation of any ambiguous statutory language." (ECF No. 21, PageID.1963; *see also* No. 23, PageID.1989–1990 (Defendants asserting that the disputes in this case are about facts and evidence rather than statutory interpretation).) Plaintiffs make no attempt to explain how *Loper Bright* applies to the disputed issues in this litigation, nor do they cite any argument from Defendants asking that the Court rule in a manner inconsistent with *Loper Bright*. Accordingly, the Court finds that *Loper Bright* is not relevant to the legal issues raised here.

7

*Am., Inc. v. Johnson*, No. 14-cv-10016, 2015 WL 12731911, at *5 (E.D. Mich. Dec. 8, 2015); *LSS Holdings, Inc. v. Miller*, No. 3:19-cv-84, 2020 WL 1491490, at *7 (S.D. Ohio Mar. 27, 2020); *Q Data Consulting, Inc. v. I.N.S.*, 293 F. Supp 2d 25, 29–30 (D.D.C. 2003). In *Fogo De Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, a case cited by Plaintiffs, the D.C. Circuit stated in dicta that—although prior grants of a visa application do not entitle a person to subsequent grants—"it may be that a pattern of visa grants of sufficient magnitude could obligate the agency to provide a 'reasoned explanation for [] treating similar situations differently.'" 769 F.3d 1127, 1144 (D.C. Cir. 2014) (quoting *ANR Pipeline Co. v. FERC*, 71 F.3d 897, 901 (D.C. Cir. 1995)). It went on to say that it did not need to resolve that issue because the plaintiff did not present evidence that the 251 petitions that had been previously approved were factually equivalent to the petition that was at issue in that case. *Id.*

The caselaw does not support Plaintiffs' contention that USCIS's prior approvals of nonimmigrant visa petitions for Mohamed mean that Defendants' denial of his immigrant visa petition was arbitrary and capricious. Unlike in *Fogo De Chao*, where there were 251 previous approved petitions, here there are only five other petitions. That does not

8

constitute a "pattern of visa grants of sufficient magnitude" to trigger any obligation to explain why Defendants were "treating similar situations differently." 769 F.3d at 1144. Plaintiffs also do not cite to the record to validate their conclusory statement that the evidentiary record was "virtually identical" across all six petitions. (ECF No. 19, PageID.1931.) Accordingly, the Court rejects Plaintiff's argument that the denial of Mohamed's immigrant visa petition was arbitrary and capricious, because Defendants failed to distinguish that denial from previous approvals of nonimmigrant visa applications.

## B. USCIS's Application of the Definition of Managerial Capacity

Plaintiffs also offer more specific objections to the decision to deny the June 2019 I-140 immigrant visa petition for Mohamed. They assert that the denial was arbitrary and capricious.

Denial of the I-140 immigrant visa petition was based, in part, on inconsistencies Defendants found in the record that they believed were not "adequately explain[ed]." (*See* ECF No. 21, PageID.1967.)

Plaintiff's June 2019 petition included an organizational chart that listed four employees for Bakka Jewelry, including Mohamed. (ECF No. 11-4, PageID.356.) USCIS determined there were inconsistencies related

9

to whether two of those employees worked for Bakka Jewelry at the time the I-140 petition was filed.

In a filing included in the administrative record, Plaintiffs listed one employee as Lead Sales Associate in 2019 and Assistant Manager in 2020. (ECF No. 18-1, PageID.768; ECF No. 18-2, PageID.1837.) But that employee had been on leave from work since September 21, 2018, due to injuries from a car accident. (ECF No. 18-1, PageID.690–691.) In response to USCIS's Notice of Intent to Deny the petition, Plaintiffs stated that, as of August 25, 2022, the injured employee had not returned to work following the accident. (*Id.*)

USCIS also determined that there was no evidence that another employee worked at Bakka Jewelry at the time the petition was filed. (*Id.* at PageID.650.) It reached this conclusion, because that employee lacked a W-2 form and was not found on the schedules provided by Plaintiffs. (*Id.* at 649–650.)

USCIS also found that there were discrepancies in the work schedules and pay statements in the record. (*Id.* at PageID.648.) Given all these discrepancies, USCIS was doubtful about the validity of the evidence Plaintiffs provided.

10

It also concluded that further evidence supported denial of Plaintiffs' immigrant visa petition. At the time the petition was filed, Bakka Jewelry had two locations and a small staff, which USCIS determined would have required Mohamed to do primarily non-managerial work. (*Id.* at PageID.650.) Based on evidence that Bakka Jewelry required two staff members at each location but only scheduled one employee or no employees on some days, USCIS inferred "that [Mohammed] was also working, and at times working by himself, despite not appearing on the schedule." (*Id.*)

Given the inconsistencies it found and the evidence in the record, USCIS concluded that Bakka Jewelry was not as complex an organization as it had claimed and that Mohamed had "a sales, administrative or operational role" rather than working primarily as a manager who supervised and controlled the work of "other supervisory, professional or managerial employees." (*Id.* at PageID.650–651.) It therefore determined that Plaintiffs had not met their burden of showing Mohamed was eligible for the immigrant visa he sought.

Plaintiffs assert that Defendants reached this conclusion in an arbitrary and capricious manner. They present five different arguments

that Defendants applied the definition of managerial capacity incorrectly in their denial of the immigrant visa petition.

### i.    *Number of Employees*

Plaintiffs argue that Defendants' decision-making was arbitrary and capricious insofar as they determined that Plaintiffs did not have enough staffing for Mohamed to have conducted primarily managerial work. (ECF No. 19, PageID.1936.)

USCIS is permitted to use staffing levels as evidence when considering whether someone is employed in a managerial or executive capacity:

> [i]f staffing levels are used as a factor in determining whether an individual is acting in a managerial or executive capacity, the reasonable needs of the organization, component, or function, in light of the overall purpose and stage of development of the organization, component, or function, shall be taken into account. An individual shall not be considered to be acting in a managerial or executive capacity merely on the basis of the number of employees that the individual supervises or has supervised or directs or has directed.

8 C.F.R. § 204.5(j)(4)(ii).

In the USCIS decision, it stated that "[s]taffing levels are important in order to determine whether the petitioner maintained sufficient

personnel to relieve the beneficiary from performing nonqualifying duties." (ECF No. 18-1, PageID.649.) USCIS concluded that Bakka Jewelry's low staffing—spread across two locations—meant Mohamed could not have been doing primarily managerial work but instead was "working more in a sales, administrative or operational role than indicated in the list of job duties [Plaintiffs] provided." (*Id.* at PageID.650.)

Plaintiffs object that Defendants imposed an "*ultra vires* requirement*" that "a Petitioning entity have a certain number of employees." (ECF No. 19, PageID.1935.) In addition, they argue that they provided sufficient evidence to establish there were enough employees for Mohamed to have done primarily managerial work. (*Id.* at PageID.1934–1935.) As support, they cite organizational charts with employee job duties, as well as affidavits related to how alarm systems were managed in a shared way by employees.[3] (*Id.*)

---

[3] One issue that is dealt with in the USCIS decision-making process is whether store alarm records show that Mohamed had been at store locations at certain times. (ECF No. 18-1, PageID.649.) Plaintiffs argued that these alarm codes were shared such that they did not demonstrate Mohamed's presence at specific store locations, though USCIS stated that such a contention "calls into question [Plaintiffs'] previous claims . . . that the code was a reliable indicator of [Mohamed] being present at the store." (*Id.*)

Defendants did not impose any *ultra vires* requirement on Plaintiffs. USCIS did not conclude that Mohamed was ineligible for the visa he sought "merely on the basis of the number of employees that the individual supervises or has supervised or directs or has directed." 8 C.F.R. § 204.5(j)(4)(ii). Instead, it considered the number of employees, in addition to other evidence like work schedules and the number of locations where Mohamed worked. (ECF No. 18-1, PageID.650.) Based on this evidence, USCIS inferred that Mohamed could not have been acting primarily in a managerial capacity.

Nor did Defendants act in an arbitrary and capricious manner with respect to their analysis of staffing at Bakka Jewelry. Plaintiffs assert the preponderance of the evidence supports their position. In support of that contention, they cite generally to organizational charts and other evidence addressed by USCIS. But they do not explain why it was arbitrary and capricious to conclude that Mohamed was most likely not working in a managerial capacity, in part based on the low staffing levels at Bakka Jewelry when the petition was filed. Courts have accepted similar reasoning, including in cases cited by Plaintiffs. *Brazil Quality Stones, Inc. v. Chertoff*, 531 F.3d 1063, 1070 (9th Cir. 2008) (holding that

it was not arbitrary and capricious to treat size as a relevant factor in considering whether someone is primarily a manager or to conclude that an entity with four employees had "not yet reached the level of organizational sophistication in which [the person seeking a visa] could devote his primary attention to managerial duties as opposed to operational ones"). That same reasoning applies here. Plaintiffs acknowledge that the role of one of the four employees mentioned in the original petition was called into question by the pay records they provided to USCIS. (ECF No. 22, PageID.1982.) And they do not contest that another employee listed in that petition was not working in 2019 due to medical leave. (*Id.* at PageID.1981.) Defendants engaged in a logical reasoning process in looking at this evidence and rejecting Plaintiffs' contention that Mohamed met the requirements of 8 U.S.C. § 1101(44)(A).

      *ii.*    *Job Duties*

Plaintiffs argue they offered sufficient evidence of Mohamed's job duties for him to be eligible for the visa he sought. USCIS found that the "multiple iterations" of Mohamed's duties that were filed were neither

"complete" nor "credible" given the "small level of staff" at Bakka Jewelry. (ECF No. 18-1, PageID.650.)

Plaintiffs assert that they submitted lists of duties for Mohamed that correlate with the duties listed in occupational handbook "the O*Net Summary Report for code 11-1021, General and Operations Manager." (ECF No. 19, PageID.1936.) Plaintiffs submitted job descriptions for Mohamed. (*See, e.g.*, ECF No. 11-4, PageID.336.) But correspondence between those descriptions and an occupational handbook does not mean that Mohamed was performing the duties Plaintiffs asserted he was performing. And that is what USCIS found unsupported. This argument therefore does not address the basis for USCIS's decision and fails to show that their reasoning was arbitrary and capricious.

Nor does Plaintiffs' citation to the standard of proof— preponderance of the evidence—support their position. (ECF No. 19, PageID.1937.) USCIS had more than a small amount of doubt about the evidence Plaintiffs presented; it evaluated the evidence and found it incomplete, not credible, and insufficient to meet Plaintiffs' burden. (ECF No. 18-1, PageID.650.) Plaintiffs' argument based on his job duties therefore fails.

16

### iii.    Work Schedules

Plaintiffs contend that USCIS reached a speculative conclusion when it reviewed Bakka Jewelry's work schedules and, given the dearth of other workers on the schedule for its two locations, concluded that Mohamed was doing primarily non-managerial work. (ECF No. 19, PageID.1937–1938.) They also argue that performing some non-managerial work would not make Mohamed ineligible for the visa he sought. (*Id.* at PageID.1938.)

Plaintiffs do not deny that the work schedules they provided include days where only one person was scheduled at a location. They challenge Defendants' interpretation of that evidence. But Defendants did not make an unsupported or speculative inference based on the work schedules Plaintiffs provided. In a sworn statement, Mohamed asserted that Bakka Jewelry's "policy is to have at least 2 people in each store at all times" who could complete certain non-managerial tasks. (ECF No. 11-11, PageID.515.) USCIS reviewed work schedules that did not list Mohamed's hours. (ECF No. 18-1, PageID.650.) It reasoned that because those schedules included times where a store was open and one or fewer employees were listed as working, Mohammed would likely have been

17

filling in and working in a non-managerial capacity, to satisfy Bakka Jewelry's two-employee-minimum policy. (*Id.*) It was reasonable for USCIS to have doubts that Plaintiffs met their burden in part based on these work schedules, which Mohamed admitted in an affidavit were "not perfect" and included "ministerial errors." (ECF No. 11-13, PageID.573.) Further, Plaintiffs' contention that doing some non-managerial work would not make Mohamed ineligible for the immigrant visa he sought may be true, but USCIS did not deny the petition based on having done *some* nonqualifying work. It issued a denial, because it found the record insufficient to conclude that Bakka Jewelry had sufficient staffing to free Mohamed up to do primarily managerial work rather than "day-to-day operational duties." (ECF No. 18-1, PageID.650.) These work schedules and the inferences Defendants reasonably drew from them support that conclusion. Accordingly, Plaintiffs' argument that Defendants improperly denied their I-140 immigrant visa petition based on work schedules fails.

### iv.  *Organizational Complexity*

Defendants stated that low staffing levels "call[] into question the organizational complexity of the petitioner at the time of filing." (ECF

No. 18-1, PageID.650.) Plaintiffs argue that reaching this conclusion "impose[d] an *ultra vires* requirement on this I-140 petition that is wholly unsupported by the law." (ECF No. 19, PageID.1938.)

Defendants did not impose an unsupported requirement on the I-140 petition. USCIS did not determine that Bakka Jewelry was insufficiently complex but instead found that it was less complex than Plaintiffs suggested, which called into question Mohamed's job duties as presented by Plaintiffs. (ECF No. 18-1, PageID.650.) This reasoning was based on the issues related to staffing levels that the Court set forth above. (*See* ECF No. 21, PageID.1973.) That lack of sufficient staffing supported USCIS's conclusion that Bakka Jewelry did not "supervise[] and control[] the work of other supervisory, professional, or managerial employees." 8 U.S.C. § 1101(a)(44)(A)(ii). USCIS's reasoning discussing the complexity of Bakka Jewelry was not arbitrary or capricious.

### v.    Supervision

Plaintiffs contend that they provided sufficient evidence to show that Mohamed supervised and controlled employees who were "supervisory, professional, or managerial." *Id.* Plaintiffs have the burden of establishing that Mohamed was "eligible for the requested [visa] *at the*

*time of filing* the benefit request and must continue to be eligible through adjudication." 8 C.F.R. § 103.2(b)(1) (emphasis added).[4] Plaintiffs argue that when they filed their I-140 petition, Mohamed "supervised one supervisory employee, who in turn supervised two employees." (ECF No. 19, PageID.1940.) Plaintiffs cite an organizational chart in support of that assertion. But that chart lists a supervisory employee under Mohamed who they acknowledge had been unable to work for over six months when the petition was filed. (ECF No. 11-4, PageID.356; ECF No. 18-1, PageID.649, 707.) They also cite the job duties they listed for Mohamed, about which USCIS reasonably raised doubts. (ECF No. 19, PageID.1940.) Accordingly, Plaintiffs' objections to USCIS's determinations about whether Mohamed supervised supervisory, professional, or managerial employees fail.

## C. Inconsistencies in the Record

Defendants assert that they found numerous inconsistencies in the record that were not adequately explained by Plaintiffs. (ECF No. 21,

---

[4] In Plaintiffs' reply, they assert that *after* they filed the I-140 petition Mohamed had supervisory employees that make him eligible for the immigrant visa he sought. (ECF No. 22, PageID.1981.) Because, as set forth below, it reasonable to conclude that Mohamed failed to meet the eligibility requirements *when the petition was filed*, the Court need not consider post-filing evidence.

PageID.1967.) Courts have found that such inadequately explained inconsistencies can call the validity of records into question, providing a basis for denying a petition because a petitioner has failed to meet their burden of proof. *Tisco Grp., Inc. v. Napolitano*, No. 09-cv-10072, 2010 WL 3464314, at *4 (E.D. Mich. Aug. 30, 2010). Plaintiffs argue that they made "minor record-keeping errors." (ECF No. 22, PageID.1982.) They suggest that these issues are outweighed by the other evidence in the record, but this contention underestimates the weight of the inconsistencies cited by Defendants.

Inconsistencies related to who was working at Bakka Jewelry when the petition was filed are particularly problematic for Plaintiffs' argument. As set forth above, one mid-level employee was not working when the petition was filed and there was no evidence that another employee worked for Bakka Jewelry at the time of filing. With respect to the mid-level employee who was on leave starting in 2018, Plaintiffs submitted a document that suggested—despite her being on leave and unable to work—she had been made an "Assistant Manager" in 2020 when she had previously been "Lead Sales Associate." (ECF No. 18-1, PageID.768.) It was reasonable for USCIS to question the credibility of

21

the evidence presented by Plaintiffs given these and other discrepancies. The failure to sufficiently address these issues in the record undermines the credibility of evidence presented by Plaintiffs and provides a further reason Defendants' denial of the petition was not arbitrary and capricious.

## IV.   Conclusion

For the reasons set forth above, the Court DENIES Plaintiffs' Motion for Summary Judgment, (ECF No. 19), and AFFIRMS Defendants' denial of Plaintiffs' immigrant visa petition.

IT IS SO ORDERED.

Dated: August 29, 2025                s/Judith E. Levy
Ann Arbor, Michigan                   JUDITH E. LEVY
                                      United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 29, 2025.

                                s/William Barkholz
                                WILLIAM BARKHOLZ
                                Case Manager